UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:26-cv-02105-SSS-AYP | Date | May 8, 2026 |
|---|---|---|---|
| Title | *Walter Alexander Lobo-Portillo v. J. Johnson et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER GRANTING EX PARTE
APPLICATION FOR A TEMPORARY RESTRAINING
ORDER [DKT. NO. 2]**

Before the Court is Petitioner Walter Alexander Lobo-Portillo's Ex Parte
Application for a Temporary Restraining Order, [Dkt. No. 2, Application or
"App"], alongside the Memorandum of Points and Authorities in support of the
Application, [Dkt. No. 3, "Memo"], and the Petition for Habeas Corpus, [Dkt. No.
1, "Pet."].  Respondents filed an Opposition.  [Dkt. No. 11].  Petitioner filed a
Reply.  [Dkt. No. 12].  Having considered the parties' arguments, relevant legal
authority, and the record in this case, the Court **GRANTS** the Application for a
Temporary Restraining Order.

## I.    BACKGROUND

Petitioner Walter Lobo-Portillo is a 50-year-old native and citizen of El
Salvador who entered the United States without inspection through Arizona in
2007.  [Pet. ¶¶ 1, 5].  He alleges that he has resided in this country for
approximately twenty years, most recently at an apartment in North Hills,
California, with his fiancée Mariana Huerta, a U.S. citizen.  [*Id.* ¶ 1].  Petitioner
alleges he has no criminal convictions in the United States and has worked as a

CIVIL MINUTES—
GENERAL    Initials of Deputy Clerk iv

freelance caterer in his community.  [*Id.* ¶¶ 1, 8].

On June 3, 2025, Petitioner was detained by Immigration and Customs Enforcement ("ICE") agents during an enforcement operation in North Hills.  [Pet. ¶¶ 2, 10].  Petitioner alleges that ICE agents pulled over the vehicle he was driving, asked him and his fiancée for documentation, and took him into custody after he could not establish lawful immigration status.  [*Id.* ¶¶ 2, 10].  Petitioner has been detained at the Adelanto ICE Processing Center since that date.  [*Id.* ¶ 21].

Petitioner alleges that, at a bond hearing held after he had been detained for 180 days, the government opposed release on the basis of an open criminal case in El Salvador.  [*Id.* ¶ 7].  Petitioner alleges that he retained counsel in El Salvador in December 2025 and that, on March 24, 2026, his Salvadoran counsel notified him that the criminal matter had been dismissed.  [*Id.*].  Petitioner alleges that he has remained in ICE custody for more than ten months notwithstanding this development.  [*Id.*].

In February 2026, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture.  [*Id.* ¶ 6].  Petitioner alleges that the application has been briefed and that a merits hearing before an Immigration Judge is scheduled.  [*Id.* ¶¶ 6, 57].  Petitioner alleges that he suffers from diabetes and high blood pressure and that he experienced a cardiac event approximately eighteen months ago, conditions he contends are aggravated by his ongoing detention.  [*Id.* ¶ 60].

## II.    LEGAL STANDARD

To justify ex parte relief, the moving party must make two showings: (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect."  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

For the Court to grant an application for a TRO, the moving party must show: (1) that he is "likely to succeed on the merits" of [his] underlying claim, (2) that he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) that "the balance of equities tips in his favor," and (4) that the requested injunction "is in the public interest."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  The standard for issuing a temporary restraining order is identical to the

standard for issuing a preliminary injunction.  *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

The Ninth Circuit uses a sliding scale approach to preliminary injunctions, such that "a stronger showing of one element may offset a weaker showing of another."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012).  Under the sliding scale approach, a petitioner is entitled to a TRO if he has raised "serious questions going to the merits . . . and the balance of hardships tips sharply in [his] favor."  *All. for the Wild Rockies*, 632 F.3d at 1131 (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).

## III.    DISCUSSION

### A.    Likelihood of Success on the Merits

First, the Court finds that Petitioner has made a sufficient showing of likelihood of success on the merits.

Although courts typically find a liberty interest in a noncitizen's freedom from detention for those who were initially detained and later released on supervision or parole, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025), courts have held that "even in circumstances like those here—lacking a prior detention, release, and re-detention—noncitizens already in the country who have 'established a life here—albeit without authorization,' possess 'a strong liberty interest in their freedom from detention.'"  *Mendoza v. Noem*, No. 5:26-CV-0728, 2026 WL 809441, at *7 (W.D. Tex. Feb. 26, 2026); (quoting *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *4 (W.D. Tex. Oct. 21, 2025)).

District courts have considered due process claims in habeas petitions filed by noncitizens without lawful immigration status who entered the United States surreptitiously, like Petitioner here.  Those courts have found that because the petitioners established a life here—albeit without authorization—they possessed a strong liberty interest in their freedom from detention.  *See, e.g.*, *Martinez*, 2025 WL 2965859 at *4; *Sanchez Alvarez v. Noem*, No. 25-cv-1090, 2025 WL 2942648, at *1, 7 (W.D. Mich. Oct. 17, 2025); *Chogllo Chafla v. Scott*, Nos. 25-cv-437, 438, 439, 2025 WL 2688541, at *1, 10 (D. Me. Sept. 22, 2025).

This is "consistent with the longstanding principle that due process applies to those who are present in the interior of the United States, regardless of their citizenship status."  *Mendoza*, 2026 WL 809441, at *7; *see generally id.* (applying

this rule to a Mexican national who entered the United States twelve years earlier without being paroled or released, finding her freedom from physical detention was protected under the Due Process Clause based on her marriage, four U.S. citizen children, and established life in the country).

Whether the Government has previously released an individual into the community and later seeks to re-detain that person, or whether the individual within the United States has simply established a life here, procedural due process requires an individualized assessment. *Mendoza*, 2026 WL 809441, at *7. Even in cases where there has been a detention of a non-citizen after such person had received or effectively received the individualized assessment of flight risk and dangerousness, courts may approach the circumstances the same. *Id.* at *8.

"[I]t is clear that there is a significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not provide [him] with a pre-detention hearing," as such a hearing provides a crucial "opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 792 F.Supp.3d at 1035.

Here, there is no indication in the record that such a pre-deprivation hearing took place. On the contrary, ICE agents conducted a traffic stop, asked Petitioner for documentation, and arrested him, without any other explanation from Respondents as to the reason for his initial seizure. In addition, Petitioner has resided in this country for approximately twenty years with his fiancée Mariana Huerta, a U.S. citizen. [Pet. ¶ 8]. He is also well-recognized as a catering freelance worker in his community and is an active member of his community church. [*Id.*]. These facts support a finding that he possesses a strong liberty interest in his freedom from detention due to his establishment of a life here. *See Mendoza*, 2026 WL 809441, at *7; *Martinez*, 2025 WL 2965859 at *4.

Therefore, there is sufficient showing of likelihood that Petitioner's due process rights were violated.

### B.    Irreparable Harm

Next, the Court finds that there is immediate, irreparable harm. The Court is aware that General Order No. 26-05 ("GO") states that TRO applications should be reserved for cases where the petitioner alleges imminent, irreparable harm that cannot be addressed by the standard scheduling order or the expedited briefing schedule. [Dkt. No. 4 at 3]. Importantly, the GO does not foreclose the Court from issuing a temporary restraining order when the facts necessitate one. Here, this case presents the requisite individualized exigency. Petitioner currently suffers

immediate, irreparable harm because he has likely been detained in violation of his constitutional rights, and "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  Every minute of liberty lost while being detained in violation of Petitioner's constitutional rights cannot be addressed by a standard scheduling order.  Petitioner is also experiencing several health problems that are not adequately addressed by the available remedies in the facility.  [Memo at 12].  Therefore, even within the framework of General Order No. 26-05, this factor favors Petitioner.

### C.    Balance of Equities and the Public Interest

Finally, the balance of the hardships and public interest factors tip strongly in Petitioner's favor because he will suffer great hardship if this Court were to deny temporary injunctive relief.  *See All. for the Wild Rockies*, 632 F.3d at 1134–35 (requiring the balance of hardships to "tip sharply" in the moving party's favor).  In the absence of an injunction, Petitioner is experiencing and will continue to experience detention that resulted from a deprivation of his due process rights, and "the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).  The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

### IV.    CONCLUSION

As such, the Court **GRANTS** Petitioner's Application for a TRO.  [Dkt. No. 2].  The Court **ORDERS** Respondents to immediately release Petitioner from their custody.

Respondents are **ENJOINED AND RESTRAINED** from again detaining Petitioner without notice and a pre-detention hearing where the government bears the burden of proving, by clear and convincing evidence, that the circumstances have changed as to his danger to the community or a flight risk, and that no conditions other than his detention would be sufficient to prevent those harms. *Pinchi*, 792 F. Supp. 3d at 1037–38.

///

Respondents are **ORDERED** to file a status report certifying compliance with the above order of release within three (3) days from the date of this Order. The Court directs the parties to present all subsequent matters in this case to the Magistrate Judge.

**IT IS SO ORDERED.**

CIVIL MINUTES— GENERAL

Initials of Deputy Clerk <u>iv</u>